Dana M. Cotham
Post Office Box 95141
Las Vegas, NV 89193-5141
Telephone:  (702) 236-2000
Facsimile:  (888) 503-0708
Email:yourLegalExpert@aol.com
Nevada Bar No. 7659
Attorney for Plaintiff
Julie Appel

☑ FILED          ____ RECEIVED
____ ENTERED          ____ SERVED ON
          COUNSEL/PARTIES OF RECORD

SEP - 9 2015

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:_____ DEPUTY

# THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Julie Appel,                          )
                                      )
            Plaintiff,                )
                                      )
      vs.                             )
                                      )          COMPLAINT AND
                                      )          DEMAND FOR JURY TRIAL
SEARS MANAGEMENT HOLDING              )
Company, a corporation, d.b.a         )          2:15-cv-1735
Sears, Roebuck and Co., a             )
Nevada foreign corporation;           )
Scott Bridges, an individual;         )
DOES 1 through V; and DOE             )
CORPORATIONS VI through X              )
inclusive,                            )
                                      )
            Defendants.               )
_____

     COMES NOW, the Plaintiff, JULIE APPEL, by and through her

counsel, Dana M. Cotham, Esq., and complains against the

Defendants SEARS MANAGEMENT HOLDING COMPANY, a Corporation, d.b.a.

Sears, Roebuck and Co, a Nevada Foreign corporation; and Scott

Bridges, in his individual and professional capacities, as

follows:

/ / /

## I.

## JURISDICTION AND VENUE

1.  This action is brought and jurisdiction lies pursuant to Title VII of the Civil Rights Act of 1964, as amended; 42 U.S.C. §2000, *et seq.*; Title I of the Americans With Disabilities Act, as amended, 42 U.S.C. 12101, *et seq.*; prohibition of employment discrimination under 42 U.S.C. § 1981; and Age Discrimination in Employment Act, 29 U.S.C. § 626, *et seq.*

2.  All conditions precedent to jurisdiction under 706 of Title VII, 42 U.S.C. §2000e5(f)(3) have been executed or complied with as a "Charge of Discrimination" was filed with the Equal Employment Opportunity Commission ("EEOC") (a true and correct copy is attached hereto as Exhibit "1" and incorporated herein) and the Nevada Equal Rights Commission ("NERC") (a true and correct copy is attached hereto as Exhibit "2" and incorporated herein), as the deferral agency, within one hundred and eighty days of the unlawful employment practices alleged or the last discriminatory act as alleged herein.

3.  The "Notice of Right to Sue," issued on request, (a true and correct copy is attached hereto as Exhibit "3" and incorporated herein) was issued by the EEOC, Charge No. 34B-2014-01017, on June 9, 2015, and Plaintiff received the notice on or about June 12, 2015.

4.  Plaintiff filed her complaint within 90 days of the

- 2 -

1  receipt of notice.

2      5. Venue is proper in this District because the acts

3  complained of occurred in this District pursuant to 28 U.S.C. §

4  1391(b).

5                              II.

6                           PARTIES

7  A.   PLAINTIFF

8      6. Plaintiff Julie is a qualified/eligible "employee" of

9  Defendant Sears within the meaning of 42 U.S.C. §2000e(f); 29 CFR

10 825.110; Title VII of the Civil Rights Act of 1991 (42 U.S.C.

11 §1981 *et seq.*); Nevada Revised Statutes §§ 608.010 and 613.010 *et*

12 *seq.*; and related claims under Nevada law.

13 B.   DEFENDANTS

14     7. Defendant, Sears Management Holdings, d.b.a. Sears,

15 Roebuck and Co., is a Nevada Foreign Corporation and employs 15 or

16 more employees and is an "employer" within the meaning of 42

17 U.S.C. §2000e(b); 29 CFR 825.104; Title VII of the Civil Rights

18 Act of 1991 (42 U.S.C. §1981 *et seq.*); Nevada Revised Statutes §§

19 608.011 and 613.310; and related claims under Nevada law. Sears

20 maintains a retail store at the Meadows Mall, 4300 Meadows Lane,

21 Las Vegas, Nevada 89107.

22     8. Scott Bridges, an individual, was, at all times, the store

23 manager of the Meadows Mall location of Defendant Sears Management

Holdings, d.b.a Sears, Roebuck and Co.   Defendant Bridges was also the Plaintiff's immediate supervisor.

9. Plaintiff is ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of DOES 1 through 10, inclusive. The Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants are in some way responsible for, or participated in, or contributed to, the matters and things complained of herein, and is legally responsible in some manner. Plaintiff will seek leave to amend this Complaint when the true names, capacities, participation, and responsibilities have been ascertained.

10.  Plaintiff was born on May 30, 1962.

11.  Plaintiff is currently a resident of Clark County, State of Nevada.

12.  Plaintiff is a member of a protected class.

13.  To Plaintiff's information and belief, Defendant Sears is a foreign corporation properly operating in the State of Nevada.   Defendant conducts business on a regular and continuing basis in Clark County, State of Nevada, and is engaged in retail services. Defendant Sears is an employer engaged in an industry effecting commerce and employs a sufficient number of employees to warrant suit under the law. Defendant Sears is authorized to conduct business in the State of Nevada and is in an industry effecting commerce within the meaning of 29 U.S.C. §630(h).

14.   To Plaintiff's information and belief, Defendant Bridges is an individual who resides in Clark County, Nevada. He served as Julie's direct supervisor while employed by Defendant Sears.

15. Defendants DOE CORPORATIONS VI through X are corporations or other business entities whose exact relationship with Defendant Sears is unknown, but are believed to be parent corporations, predecessors, or successors in interest to Defendant Sears, and/or joint employers of the Plaintiff with Defendant Sears, and an employer defined in 42 U.S.C. §2000c. Plaintiff is informed and believes that each of the Defendants designated herein as DOE and DOE CORPORATIONS are responsible in some manner for the events and happenings referred to and caused damage proximately to Plaintiff as alleged herein and Plaintiff will ask leave of court to amend this Complaint to insert true names and capacities of DOES 1 through V and DOE CORPORATIONS VI through X, when the same have been ascertained and to join such Defendants to this action.

16.   All discriminatory practices alleged herein to be unlawful were committed within the jurisdiction of the United States District Court for the District of Nevada, Southern Division, thus venue is proper under 28 U.S.C. §1391.

/ / /

/ / /

/ / /

/ / /

## III.

## STATEMENT OF FACTS

17.  On December 20, 2013, Sears Holdings Corporation, d.b.a Sears, Roebuck and Co. (hereinafter "Sears"), hired Julie Appel as an Assistant Store Manager Brand Central.

18.  She began working at the Meadows Mall store location, 4300 Meadows Lane, Las Vegas, Nevada.

19.  At the time of her hire, she brought with her 20 years of retail management experience.

20.  During her first few months with Sears, Julie worked a 5-day/45 hours per week shift.  At some point after her first few months, the store manager and Julie's immediate supervisor, Scott Bridges, (hereinafter "Bridges"), changed her schedule.

21.  Bridges required Julie to work six (6) days a week, under the directive of "not leaving until the work is done," with each day requiring at least 12 hours of work.

22.  Immediately after learning of the new work hours, Julie informed her immediate supervisor Bridges and Jon Lawson, Sears District Manager of her severe asthmatic condition.

23.  At a point shortly after her schedule changed, she also informed Human Resources of her severe asthmatic condition.

24.  Julie suffers from the serious health condition known as Reactive Airway Disease Syndrome (RADS) which is a medical

condition/physical condition covered by the ADA, as amended, and the Nevada Fair Employment Act.

25.   In spite of her disability, Julie was able to perform the essential functions of her job as an Assistant Store Manager Brand Central.

26.   Upon learning of the new schedule requirement, Julie requested an accommodation for her disability.

27.   She requested to work the same number of hours in five (5) days rather than six (6) days.

28.   She informed Sears the RADS (severe asthma) caused her to need more than one (1) day for her lungs to "recover."

29.   As a qualified individual with a disability, Julie understood Sears maintained an obligation to engage in the interactive process with her to attempt to accommodate her.

30.   Sears denied her request for an accommodation without any interactive process on the part of Sears.

31.   Instead, upon learning of Julie's accommodation request, Bridges responded by telling her, "what was fair for one is fair for all" and she, "just needed to deal with it."   In other words, everyone is treated equally, no accommodation or "special treatment" for anyone.   Sears denied her request without any interaction or dialogue with Julie.

32.   Bridges informed Julie he would not accommodate her in any way and he further informed her that her condition was

basically irrelevant.  Accordingly, he denied her request without any interaction or conversation with Julie.

33.   Upon express notice of Julie's disability, Bridges, the highest ranking manager at a Sears store location and Sears' Human Resources Department each failed to comply with the most basic disability law requirement—the interactive process.

34.   Sears failed to determine if there was an accommodation deemed reasonable or in the alternative, if any and/or all possible accommodations rose to the level of an undue hardship.

35.   Throughout Julie's employment Bridges continuously berated, publically humiliated, and undermined Julie and other female Assistant Managers in the presence of other employees (some of whom were Julie's direct subordinates), and worst of all, Bridges yelled at Julie and other employees while in ear-shot of Sears' customers.

36.   Bridges also chose to blatantly violate Sears' own company policies.

37.   One such violation involved the Sears' policy requiring "back of house" employees to assist with moving appliances around on the floor.

38.   Bridges would NOT allow back of house employees to assist with the moving of the appliances.  Rather, he required the floor staff and management, in other words, non-back of house

employees, to move the appliances around in spite of the company's policy.

39.   Additionally, he continuously required older workers to complete tasks and perform work they were not supposed to, like moving around heavy furniture.

40.   Bridges did not publically humiliate the two male Assistant Store Managers.

41.   Throughout Julie's employment, Bridges continued to exhibit inappropriate behavior and his treatment of her became increasingly more intolerable.

42.   Even though Julie wanted the behavior and treatment to change and/or stop, she did not want to file a formal complaint, rather, she attempted on numerous occasions to resolve the matter informally.

43.   Julie engaged in numerous conversations with Jon Lawson, District Manager Retail Services – D/196 (hereinafter "Lawson").

44.   Lawson said he would speak with Bridges; however, Lawson also informed Julie he believed she was "too sensitive" and she was "misreading Mr. Bridges."

45.   Lawson NEVER mentioned, nor assured, Julie of Sears' "commitment" to prevent her from being retaliated against.

46.   Nothing ever came of any of her conversations with Lawson; however, Bridges' inappropriate behavior towards and treatment of Julie continued to increase.

47. While Julie believes Lawson spoke with Bridges, neither his treatment of her, nor his behavior towards her ever improved.

48. To the contrary, Bridges' treatment of Julie and behavior towards her, continued to intensify with increased hostility and overall lack of cooperation.

49. Since Lawson was unable to resolve Julie's concerns, on or about March 18, 2014, Julie filed her formal complaint utilizing the "88 SEARS" process (an internal complaint mechanism).

50. When Julie filed her March 18 complaint, she reported numerous incidents of Bridges harassing her (as well as other staff) and his increased intimidation.

51. Upon filing her complaint, the Sears' system assigned her case a number: 1921956624.

52. Following the filing of her complaint, she continued to follow up every few days to find out the status of her complaint.

53. After the first week, she continued to follow up on a weekly basis.

54. After several weeks of continuous follow up, Lawson, finally contacted her to discuss the merits of her complaint.

55. The conversation lasted approximately 90 minutes and his conclusion, which he shared with her immediately was, once again, focused on his feelings about Julie being "too sensitive."

56.   In spite of her "sensitivity," he promised Julie he would discuss Julie's concerns with Bridges.

57.   After the meeting, Julie's complaint seemed to just "fade" away; however, what did not "fade away" was Bridges' behavior and his treatment of Julie.

58.   In fact, once again, his behavior and treatment got worse during the time following the filing of her complaint.

59.   While Bridges continued to spiral out of control and continued to mistreat Julie, she continued to try to connect with someone to discuss her "88 SEARS" case.

60.  She finally connected with someone and learned Sears closed the case.   Sears provided no further explanation.

61.   Sears stated it maintained no obligation to inform her of anything related to her case, least of all the disposition.

62.   No one ever contacted Julie at any point after she filed her complaint to discuss her complaint or its ultimate disposition.

63.  As previously stated, after Julie lodged her complaint through "88 SEARS," Bridges treatment of her grew increasingly unbearable, culminating in Bridges assaulting and battering her.

64.   More specifically, on or about June 10, 2014, an incident occurred involving Bridges, Julie, and two other employees (Sammie, last name unknown and Joseph Herbert).

65. Bridges very loudly and very publically disciplined Sammie after which Julie attempted to diffuse the situation.

66. Specifically, she stated she was going to "recall the rally" (in other words, reiterate to the staff the need for their attendance at the "gathering") and she began to walk away.

67. Julie could not believe as she watched Bridges forcefully reach out and grab her arm, physically pulling her back, and while still firmly holding her arm, he commanded in a loud, firm voice, "NO, you will stay and listen to this conversation!"

68. Julie feared for her own safety, as well as the safety of the other employees.

69. This violent encounter reinforced her concern about the hostility in the workplace which she previously reported back on March 18, 2014 in her first "88 SEARS" complaint.

70. In spite of knowing the last time she filed a complaint nothing happened. Julie wanted to do the right thing. She once again contacted "88 SEARS," to lodge her complaint about the assault and battery through the proper channels.

71. The system assigned a new case number: 1922049450 and Julie then spoke with a Sears' employee to provide Sears with more details of the incident.

72. When Julie informed the "intake representative" of Bridges' assault and battery of her, the intake personnel said, "I cannot believe Scott would do that."

73. This is entirely inappropriate and casts a shadow of doubt upon the neutrality and integrity of this process.

74. Albeit incomprehensible, just like the first time in March, Julie waited, and waited, and waited for the investigation to begin.

75. She never heard anything (again) and basically nothing happened (again), and nothing changed (again).

76. During the next several weeks after she filed her second complaint, in a good faith attempt to resolve yet another matter involving Bridges, Julie once again reached out to Lawson, her District Manager.

77. Lawson once again failed to remedy her concerns.

78. Lawson directed Julie "to do nothing" regarding her assault and battery complaint even though she told him Bridges was still intimidating everyone, yelling and screaming, not to mention it had been two weeks since she filed her "88 SEARS" complaint with no reply from Sears.

79. Lawson's advice to her was, "be patient and allow time for a proper investigation."

80. Sears maintained Bridges' employment as a store manager.

81. Sears allowed him to continue to directly supervise Julie, the very employee he assaulted and battered; the very same employee who already lodged serious allegations against him.

82.   The only assistance Lawson provided to Julie was for her "to wait" and "have patience."

83.   Julie is informed and believes and thereon alleges that another incident involving Bridges occurred at Sears prior to the commencement of Julie's employment, specifically, Bridges inappropriately "touched" a female employee.

84.   Julie is informed and believes and thereon alleges that the aforementioned incident was reported and nothing came of that allegation either.

85.   Julie is informed and believes and thereon alleges Bridges no longer works at the Meadows Mall store location.

86.   After tolerating Bridge's treatment for seven months, reporting his treatment and behavior through the proper channels, receiving no recourse, and ultimately enduring an assault and battery at the hands of Bridges, Julie did what any reasonable person would do in her situation—she resigned on July 18, 2014.

87.   Sears was aware Bridges violated its own policies and yet continued to employ Bridges.

88.   Julie exhausted the administrative requirements of the NERC and EEOC by filing an administrative complaint.   Julie subsequently requested a right to sue letter from same and the right to sue letter was issued on June 9, 2015 and mailed on June 10, 2015.

/ / /

## IV.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### FAILURE TO ACCOMMODATE
[Against All Defendants, Does I - V, and Doe Corporations VI - X]

89. Plaintiff hereby incorporates paragraphs 1 through 88 of this Complaint as though fully set forth herein.

90. Under the Americans With Disabilities Act (ADA) and the Nevada Fair Employment Act, a qualified person with a disability is described as someone who has a physical or mental impairment that substantially limits one or more major life activities, or is regarded as having such impairments, or has a record of such impairment.

91. Breathing and working are "major life activities."

92. Asthma and allergies are considered disabilities under the ADA, even if symptoms are controlled by medication.

93. Under the ADA, an employer must provide reasonable accommodation for an employee with a known physical disability.

94. Julie suffers from RADS, a physical disability/medical condition covered by the ADA and the Nevada Fair Employment Act.

95. Julie's physical disability/medical condition was well-known by Bridges and Sears. In spite of knowing of her condition, Defendants failed to reasonably accommodate her physical disability/medical condition as alleged herein.

96.   As a result of Defendants' failure to accommodate Julie's physical disability/medical condition, Julie hss suffered and continues to suffer damages in the form of lost wages and other employment benefits, and severe emotional and physical distress, the amount of which will be proven at trial.

97. Defendants and each of them acted for the purpose of causing Julie to suffer financial loss and emotional distress and physical distress and are guilty of oppression and malice, justifying an award of exemplary and punitive damages.

### SECOND CAUSE OF ACTION
### FAILURE TO ENGAGE IN INTERACTIVE PROCESS
### [Against All Defendants, Does I - V, and Doe Corporations VI - X]

98. Plaintiff hereby incorporates paragraphs 1 through 97 of his Complaint as though fully set forth herein.

99.   It is unlawful for an employer to fail to engage in a timely, good faith interactive process with a disabled employee to determine effective reasonable accommodation.

100.   As alleged herein, Defendants failed to engage in the interactive process with Julie in order to determine effective reasonable accommodations for Julie's physical disability/medical condition.

101.   As a result of Sears' and Bridges' failure to engage in the interactive process with Julie to determine reasonable accommodations for Julie's physical disability/medical condition, Julie has suffered and continues to suffer damages in the forms of

1  lost wages and other employment benefits, and severe emotional and

2  physical distress, the amount of which will be proven at trial.

3      102.  Defendants and each of them acted for the purpose of

4  causing Julie to suffer financial loss and emotional distress and

5  physical distress and are guilty of oppression and malice,

6

7  justifying an award of exemplary and punitive damages.

8                    **THIRD CAUSE OF ACTION**
                **DISCRIMINATION ON THE BASIS OF SEX**
9    **[Against All Defendants, Does I - V, and Doe Corporations VI — X]**

10     103. Plaintiff hereby incorporates paragraphs 1 through 102

11  of this Complaint as though fully set forth herein.

12     104.  In short, it is an unlawful employment practice for an

13

14  employer such as Sears to discriminate against any person with

15  respect to the person's compensation, terms, conditions or

16  privileges of employment, because of her sex; or to limit,

17

18  segregate, or classify an employee in a way which would deprive or

19  tend to deprive the employee of employment opportunities or

20  otherwise adversely affect her status as an employee, because of

21  her sex.

22     105.  Sex-based discrimination and harassment violate Nevada

23  law as well as Title VII of the Civil Rights Act of 1964 as

24  amended.

25     106.  Bridge's unfavorable treatment of Julie while employed

26

27  by Sears constituted sex-based discrimination.

28

107. His treatment of her violated both federal and state law.

108. Julie was subjected to adverse action as a result of the sex-based discrimination.

**FOURTH CAUSE OF ACTION**
**RETALIAITON**
**[Against All Defendants, Does I – V, and Doe Corporations VI – X]**

109. Plaintiff hereby incorporates paragraphs 1 through 108 of this Complaint as though fully set forth herein.

110. The law forbids retaliation when it comes to any aspect of employment, including hiring, firing, pay, job assignments, promotions, layoff, training, fringe benefits, and any other term or condition of employment.

111. There are three essential elements of a retaliation claim: (a) protected activity -- opposition to discrimination or participation in the statutory complaint process; (b) adverse action; and (c) causal connection between the protected activity and the adverse action.

112. When Julie engaged in the protected activity of lodging an internal complaint alleging Bridges' and Sears' failure to accommodate her disability, Bridges' treatment of Julie deteriorated and his hostile behavior towards her increased, which culminated in her constructive discharge.

113. Defendants and each of them acted for the purpose of causing Julie to suffer financial loss and emotional distress and

physical distress. Defendants and each of them acted with malice and with reckless indifference to Julie's federally protected rights and are guilty of oppression and malice, justifying an award of exemplary and punitive damages.

## FIFTH CAUSE OF ACTION
## ASSAULT
**[Against All Defendants, Does I - V, and Doe Corporations VI - X]**

114. Plaintiff hereby incorporates paragraphs 1 through 113 Of this Complaint as though fully set forth herein.

115. Respondeat superior and intentional torts law in Nevada holds an employer liable for an assault committed by an employee when the employee is acting in the course and scope of his employment.

116. While an employee is engaged in the service and work of his employer, and he does an act personal to himself that is so inextricably intertwined with his service to his employer, his doing so does not break the employment relationship so as to release the employer from responsibility for the employee's conduct.

117. There can be no dispute Bridges' assault of Julie was intertwined with his service and work at Sears (serving as a store manager). He assaulted her while performing his duties as store manager and accordingly did not break the employment relationship, in other words, Sears is not released from responsibility for its employee, Bridges' conduct.

118.   Defendants and each of them acted for the purpose of causing Julie to suffer financial loss and emotional distress and physical distress.   Defendants and each of them acted with malice and with reckless indifference to Julie and and are guilty of oppression and malice, justifying an award of exemplary and punitive damages.

### SIXTH CAUSE OF ACTION
### BATTERY
**[Against All Defendants, Does I – V, and Doe Corporations VI – X]**

119. Plaintiff hereby incorporates paragraphs 1 through 118 Of this Complaint as though fully set forth herein.

120. Respondeat superior and intentional torts law in Nevada holds an employer liable for a battery committed by an employee when the employee is acting in the course and scope of his employment.   While an employee is engaged in the service and work of his employer, and he does an act personal to himself that is so inextricably intertwined with his service to his employer, his doing so does not break the employment relationship so as to release the employer from responsibility for the employee's conduct.

121.   There can be no dispute Bridges' battery of Julie was intertwined with his service and work at Sears (serving as a store manager).   He battered her while performing his duties as store manager and accordingly did not break the employment relationship,

in other words, Sears is not released from responsibility for its employee, Bridges', conduct.

122.  Defendants and each of them acted for the purpose of causing Julie to suffer financial loss and emotional distress and physical distress.  Defendants and each of them acted with malice and with reckless indifference to Julie and are guilty of oppression and malice, justifying an award of exemplary and punitive damages.

### SEVENTH CAUSE OF ACTION
### VICARIOUS LIABILITY
**[Against All Defendants, Does I – V, and Doe Corporations VI – X]**

123. Plaintiff hereby incorporates paragraphs 1 through 122 of this Complaint as though fully set forth herein.

124. Vicarious liability is a separate theory of liability, which provides that an employer is liable for the torts of an employee under an agency theory, even if the employer did nothing wrong.

125.  The acts of an agent of the company are assumed, by law, to be the acts of the company itself, provided the tortfeasor was acting within the course of his employment.

126.  Bridges was exercising his authority as a supervisor to "demand" an employee "listen to a conversation," and accordingly his actions were well within the boundaries of the course and scope of his employment. Therefore, vicarious liability attaches to Sears.

## EIGHTH CAUSE OF ACTION
### NEGLIGENT HIRING
[Against Defendant Sears, Does I – V, and Doe Corporations VI – X]

127.  Plaintiff hereby incorporates paragraphs 1 through 126 of this Complaint as though fully set forth herein.

128.  Nevada case law is clear, the tort of negligent hiring imposes a general duty on the employer to conduct a reasonable background check on a potential employee to ensure that an employee is fit for the position.

129.  Bridges' "hot temper" and hostility in the workplace were evident and Julie attempted to bring this to Sears' attention numerous times informally and then officially in her "88 SEARS" complaint in March 2014.

130.  Julie is informed and believes and therefore alleges, Bridges acted this way in his former positions, and Sears failed to make adequate inquiry concerning Bridges' behavior in his former positions.

131.  Sears breached its duty and is negligent in its hiring of Scott Bridges.

132.  As a direct and proximate result of Sears' actions, Julie suffered damages.  Sears acted for the purpose of causing Julie to suffer financial loss and emotional distress and physical distress and are guilty of oppression and malice, justifying an award of exemplary and punitive damages.

/ / /

**NINTH CAUSE OF ACTION**
**NEGLIGENT RETENTION**
**[Against Defendant Sears, Does I – V, and Doe Corporations VI – X]**

133.  Plaintiff hereby incorporates paragraphs 1 through 132 of this Complaint as though fully set forth herein.

134.  Similar to the duty attached when hiring an employee, the employer maintains a duty to use reasonable care in the training, supervision, and retention of its employees to ensure an employee is fit, and remains fit, for his position.

135.  Where a person acting in a managerial capacity either does an outrageous act or approves of such an act by a subordinate, the imposition of punitive damages upon the employer serves as a deterrent to the employment of unfit persons for important positions.

136.  Julie is informed and believes and thereon alleges Sears knew of another incident whereby Bridges inappropriately touched a Sears' female employee shortly before Julie became employed with Sears.

137.  Julie herself complained numerous times of Bridges' "short fuse" as well as his temperament and behavior overall being inappropriate for an employee of his caliber, specifically, a store manager.

138.  In spite of knowing this, as well as Sears having the knowledge that Bridges regularly and publically intimidated and humiliated staff both on the floor as well as back of house, Sears

breached its duty owed to Julie when it maintained Bridges' employment.

139.   He remained employed even after he assaulted and battered Julie. And worse yet, he continued, at Sears' direction, to directly supervise Ms. Appel.

140.   As a direct and proximate result of Sears' actions, Julie suffered damages.  Sears acted for the purpose of causing Julie to suffer financial loss and emotional distress and physical distress and are guilty of oppression and malice, justifying an award of exemplary and punitive damages.

**TENTH CAUSE OF ACTION**
**TORTIOUS BREACH OF THE**
**IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**[Against All Defendants, Does I - V, and Doe Corporations VI - X]**

141.  Plaintiff hereby incorporates paragraphs 1 through 140 of this Complaint as though fully set forth herein.

142.  In every contract or agreement there is an implied promise of good faith and fair dealing.  This means each party impliedly agrees not to do anything to destroy or injure the right of the other to receive the benefits of the contract.  Thus, each party has the duty not to prevent or hinder performance by the other party.  In addition to being a breach of contract, a breach of the implied covenant of good faith and fair dealing may also be a tort.  A breach of the implied covenant of good faith and fair dealing will be a tort when there exists a special relationship of

trust, reliance, or dependency between the parties. A tortious breach of the implied covenant of good faith and fair dealing allows for recovery of any other damages proximately caused by the defendant's conduct including physical or emotional distress, suffering, inconvenience, anxiety, loss of security, peace of mind, humiliation, indignity, disgrace, or financial losses.

143. There existed a special element of reliance between Julie and Bridges, where Bridges was Julie's supervisor in a superior or entrusted position.

144.   There existed a special element of reliance between Julie and Defendant Sears where Sears was in a superior or entrusted position.

145. Defendants each breached their respective duty of good faith and fair dealing.

146. Julie was harmed and suffered damages as a result of these breaches.

### ELEVENTH CAUSE OF ACTION
### TORTIOUS CONSTRUCTIVE DISCHARGE
**[Against Defendant Sears, Does I - V, and Doe Corporations VI - X]**

147. Plaintiff hereby incorporates paragraphs 1 through 146 of this Complaint as though fully set forth herein.

148.   In Nevada, an employer is liable for Tortious Constructive Discharge when each of the following elements are present:  (a) the employee's resignation was induced by action and conditions that violate public policy; (b) a reasonable person in

the employee's position at the time of the resignation would have also resigned because of the aggravated and intolerable employment action and conditions; (c) the employer had actual or constructive knowledge of the intolerable actions and conditions and their impact on the employee; and (d) the situation could have been remedied.

149.   Julie's resignation was induced by Sears discriminating against her and failing to attempt to accommodate her disability. Additionally, she was forced to resign because of Sears' failure to investigate and remedy Bridges' treatment of Julie.

150.   A reasonable person in Julie's position at the time of her resignation would have also resigned because of the aggravated and intolerable employment action and conditions created by Sears and Bridges.

151.   Sears had actual knowledge of the intolerable actions and conditions and their impact on Julie as she filed two separate formal "88 SEARS" complaints and had numerous conversations with Lawson, her District Manager.

152.   Sears could have remedied this matter by investigating the allegations and removing Julie from Bridges' supervision. Additionally, Sears could have engaged in the interactive process Bridges to continue his treatment and increasingly hostile behavior towards Julie that culminated in his assault and battery of her on June 10, 2014.   In spite of her formally complaining

again, Bridges remained her direct supervisor which further enabled his campaign of inappropriate treatment and increasingly hostile behavior towards her.

153.   As a direct and proximate result of Sears' actions, Julie suffered damages.   Sears acted for the purpose of causing Julie to suffer financial loss and emotional distress and physical distress and are guilty of oppression and malice, justifying an award of exemplary and punitive damages.

**V.**

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Julie prays that this Court grant the following relief:

A.   For compensatory damages according to proof and prejudgment interest to the extent allowed by law;

B.   For exemplary and punitive damages according to proof;

C.   For recovery of back pay, front pay, and all other lost employment benefits;

D.   For injunctive relief requiring Defendant Sears to provide training to its managers to educate employees about disabilities and specifically the requirements under the Americans With Disabilities Act.

C. For attorney fees and costs on the First, Second, and Third Causes of Action; and

/ / /

F. For such other and further relief as the court deems just and proper.

LAW OFFICES OF DANA M. COTHAM

Dated:    9.9.15

Dana M. Cotham
Attorney for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial in this action.

LAW OFFICES OF DANA M. COTHAM

Dated:    9.9.15

Dana M. Cotham
Attorney for Plaintiff